```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```

```
IN RE:  REGIONS MORGAN KEEGAN    )
SECURITIES, DERIVATIVE, AND      )
ERISA LITIGATION                 )
                                 )
FRANCIS BRILLIARD, et al.,       )
                                 )
    Plaintiffs,                  )
                                 )
v.                               )   Case Nos. 10-02008
                                 )             MDL 2009
MORGAN ASSET MANAGEMENT, INC.,   )
et al.,                          )
                                 )
    Defendants.                  )
```

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND**

Before the Court is Plaintiffs' January 15, 2010, Motion to Remand. (See Dkt. No. 7.) Defendant Morgan Asset Management, Inc. ("Morgan Asset"), joined by the nineteen individual Defendants[1], jointly filed a response in opposition on January 29, 2010. (See Dkt. No. 8.) Plaintiffs[2] generally assert that

---

[1] The Individual Defendants are J. Kenneth Alderman; Carter E Anthony; Jack R. Blair; Albert C. Johnson; James C. Kelsoe, Jr.; R. Patrick Kruczek; William Jeffries Mann; Charles D. Maxwell; James Stillman R. McFadden; Allen B. Morgan, Jr.; W. Randall Pittman; Mary S. Stone; Brian B. Sullivan; David H. Tannehill; Joseph C. Weller; J. Thompson Weller; Archie W. Willis, III; James D. Witherington; Michele F. Wood.

[2] The original Plaintiffs were Frances Brilliard; Canale Funeral Homes, Inc.; Ann E. Duncan; the Margaret P. Eckstein Revocable Trust; Catherine Freeburg; the Charitable Remainder Unitrust of Charles and Catherine Freeburg; Alis Goldate; the Goldate Living Trust; Rose G. Johnsey; Henry Klosky; Patricia Klosky; Sharon Lyon; James H. Moore, Jr.; Bond N. Moore; Richard Mosby; Michael Muhlbauer; Lawson W. Newman; Margaret Louise P. Newman; the Newman Revocable Living Trust; Ruth Oseman; Gary Peebles; Linda Peebles; the Clinton R. Pearson Trust; the Robert E. Bedford Trust; the Catherine D. Orgill

their Complaint contains no removable, federal causes of action. (Plaintiffs' Motion to Remand to State Court at 2-3.) ("Pls' Memo")  Because Plaintiffs' Complaint fails to raise a substantial, removable issue of federal law, the Court finds that it does not have federal question jurisdiction and GRANTS the Motion to Remand.

## I. BACKGROUND

Each Plaintiff invested in one or more of the following funds:  the Regions Morgan Keegan Select High Income Fund, RMK Select Intermediate Bond Fund, RMK Strategic Income Fund, RMK Advantage Income Fund, RMK High Income Fund, and the RMK Multi-Sector High Income Fund (collectively "the Funds").  (Compl. ¶ 1.)  Morgan Keegan & Co., Inc., which is not a named defendant in this action, is an investment bank and full-service brokerage firm that marketed the Funds to its customers and provided portfolio accounting and other services to the Funds for a fee.[3] (Id. ¶ 33.)  Defendant Morgan Asset is a registered investment advisor that managed and advised the Funds during the time covered by this suit.  (Id. ¶ 34.)  Morgan Asset charged the Funds a management fee based on the Funds' "average daily net

---

Unitrust; the Catherine Orgill West Trust; the Linda S. McFarland Trust; Elizabeth J. Pierce; Judy L. Jackson; Steven E. Priddy; Rebecca J. Priddy; W. Glenn Sigman; the Carol P. Sigman Revocable Trust; Joseph Warren; Michael D. Weiss; Marcia Weiss; Jerome Woods; Dana Woods; and Elzie Yeates.  Plaintiffs Brillard; Bond N. Moore; James H. Moore, Jr.; Oseman; Warren; Michael Weiss; Marcia Weiss; and Yeates voluntarily dismissed their claims on April 29, 2010.  (See Dkt. No. 10.)

[3] Plaintiffs chose to pursue their claims against Morgan Keegan & Co., Inc., in arbitration.  (See Compl. ¶ 33 n.1.)

assets." (Id.)  The Individual Defendants served as directors of one or more of the Funds during the relevant time. (Id. ¶¶ 35-53.)

During 2007-08, the Funds "experienced a meltdown of unprecedented proportions." (Id. ¶ 57.) Plaintiffs assert that the economic downturn did not cause the dramatic drop in the Funds' share prices, but that the Funds' "extreme overconcentration" in the riskiest mortgage-backed securities caused their collapse. (Id. ¶¶ 59, 61.) Plaintiffs allege that the Funds misrepresented their actual asset allocation and risk exposure in their public prospectuses and filings with the Securities and Exchange Commission. (Id. ¶¶ 70, 73.) Specifically, Plaintiffs assert that the Funds invested more than 25% of their assets in securities backed by sub-prime mortgages; although the Funds' own investment restrictions prohibited them from investing more than 25% of their assets in the same company or industry. (Id. ¶ 79.) The Funds did not reveal this investment to shareholders nor did they reveal that these securities were largely illiquid because there was a limited market for them. (Id. ¶ 76a.) Thus, if the Funds had to sell the securities, there was a substantial risk that their value would collapse because of a lack of potential purchasers in the market. (Id. ¶ 76c.)

Plaintiffs also allege that the Funds pursued similar investment strategies – investing in high-risk, mortgage-backed securities – despite being marketed to investors as independent Funds with differing investment philosophies. (Id. ¶ 77.) Investors who purchased more than one Fund under the theory that they were diversifying their risk actually were unknowingly enlarging their exposure to sub-prime securities and increasing their risk. (Id. ¶ 78.) When the sub-prime mortgage market began to decline, investors suffered losses of up to 90%. (Id. ¶ 57.) By comparison, Plaintiffs assert that peer funds actually gained 1.87% in value on average for the year 2007. (Id. ¶ 58.) In July 2008, Hyperion Brookfield replaced Morgan Asset as the Funds' investment advisor. (Id. ¶ 60.) The Regions Morgan Keegan Select High Income Fund and the RMK Select Intermediate Bond Fund closed in May 2009. The remaining four Funds continue to trade but were worth "less than 10% of their offering prices" as of the date Plaintiffs filed suit. (Id.)

Plaintiffs filed suit on December 2, 2009, in the Circuit Court for Shelby County, Tennessee. (Id. at 1.) Defendants removed the suit to this Court on January 4, 2010, asserting that the Court has federal question jurisdiction. See 28 U.S.C. §§ 1331, 1441(a). Plaintiffs allege that the Defendants' actions violate multiple sections of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l, 77o. (Compl. ¶¶ 110-32.) Plaintiffs

4

also bring state-law claims of common law fraud; aiding and abetting fraud; violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104; and violation of the Tennessee Securities Act, Tenn. Code Ann. §§ 48-2-121 – 122.  (Compl. ¶¶ 133-66.)  Plaintiffs allege that they have collectively suffered more than $8.4 million in losses and seek compensatory damages, disgorgement of all fees earned by the Defendants, punitive damages, and attorneys' fees.  (Id. ¶¶ 83-109, 166.)  Plaintiffs filed the present Motion to contest this Court's jurisdiction.

II.  STANDARD OF REVIEW

On a motion to remand, the defendant bears the burden of establishing that removal was proper.  Long v. Bando Mfg. of Am., Inc., 201 F.3d 754, 757 (6th Cir. 2000).  Removal under 28 U.S.C. §§ 1441 and 1446 is appropriate when federal jurisdiction existed at the time of removal, without consideration of subsequent events.  Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 375 (6th Cir. 2007).  "The removal petition is to be strictly construed, with all doubts resolved against removal."  Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit, 874 F.2d 332, 339 (6th Cir. 1989) (citing Wilson v. USDA, 584 F.2d 137, 142 (6th Cir. 1978)).  Removal jurisdiction requires a defendant to show that a federal court has original jurisdiction over the action, either through: (1)

5

diversity of citizenship under 28 U.S.C. § 1332; or (2) federal question jurisdiction under 28 U.S.C. §§ 1331, 1441.

**III. ANALYSIS**

**A. When Federal Question Jurisdiction Exists**

A defendant's right to remove an action originally filed in state court is statutory. See 28 U.S.C. § 1441. Where, as here, defendants seek to remove a suit to federal court based on federal question jurisdiction, they may do so only where the suit "aris[es] under the Constitution, treaties or laws of the United States."[4] Id. § 1441(b); see also 28 U.S.C. § 1331. It is well settled that the jurisdiction conferred by § 1331 is narrower than that allowed by Article III, Section 2 of the Constitution. See Merrell Down Pharms., Inc. v. Thompson, 478 U.S. 804, 807 (1986). For a suit to arise under federal law, one of three preconditions must exist: 1) federal law creates the plaintiff's cause of action; 2) plaintiff's right to relief under state law requires resolution of a substantial federal-law question actually in dispute; or 3) the claim is in substance one of federal law. City of Warren v. City of Detroit, 495 F.3d 282, 286 (6th Cir. 2007).

---

[4] Defendants cannot remove Plaintiffs' suit based on this Court's diversity jurisdiction because all Plaintiffs and at least some Defendants are Tennessee citizens. (See Compl. ¶¶ 2-32, 34); see also Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806) (interpreting the statutory grant of diversity jurisdiction to require complete diversity among the parties).

6

Where federal law does not expressly create a plaintiff's cause of action, a court looks to the face of a plaintiff's well-pleaded complaint to determine whether federal-question jurisdiction is appropriate. Franchise Tax Bd. v. Const. Laborers Vacation Trust, 463 U.S. 1, 9 (1983). Specifically, the court examines "what necessarily appears in the plaintiff's statement of his own claim" in his complaint. Id. at 10 (internal quotation marks and citation omitted). The plaintiff is the master of his complaint. When an aggrieved party may bring an action under both state and federal law, he may choose to limit his remedy to that provided by state law. Loftis v. United Parcel Serv., Inc., 342 F.3d 509, 515 (6th Cir. 2003). However, a plaintiff runs the accompanying risk that his federal claims may later be precluded. Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 366 (5th Cir. 1995).

The defendant must demonstrate that the asserted federal element is "an essential one[] of the plaintiff's cause of action" for federal jurisdiction to lie. Gully v. First Nat'l Bank, 299 U.S. 109, 112 (1936). A defendant may not establish jurisdiction based on a theory not advanced by the plaintiff in his complaint. Merrell Dow, 478 U.S. at 809 n.6. Nor may a defendant remove a case based on a federal defense, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only

7

question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987) (citation omitted). Determining whether federal question jurisdiction exists is ultimately a question of judgment where a court must "pick[] the substantial causes [of action] out of the web and lay[] the other ones aside," and then balance Congressional intent, judicial power, and federalism concerns. Franchise Tax Bd., 463 U.S. at 20-21 (internal quotation marks and citation omitted); see also Merrell Dow, 478 U.S. at 810. There is no "single, precise, all-embracing test" to determine when federal-law issues imbedded in state-law claims trigger federal jurisdiction. Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005) (internal quotation marks and citation omitted).

### B. Defendants Have Failed to Establish Federal Question Jurisdiction

Defendants assert that Plaintiffs' Complaint raises substantial questions of federal law. (Defendant's Response in Opposition to Plaintiffs' Motion to Remand at 1.) ("Defs' Resp.") Defendants argue that, because federal regulations govern the Funds, Plaintiffs' allegations about the Funds' lack of liquidity and diversification necessarily call into question the federal standards governing those requirements. (Id. at 5.) For added emphasis, Defendants point to paragraph seventy of the Complaint, which specifically alleges that Defendants' actions

8

were "[i]n violation of SEC Rules." (Id.)  Plaintiffs respond that they can succeed in their state-law causes of action without proving any violations of federal law and that their claims under the Securities Act of 1933 are not removable. (Pls' Memo at 3.)

In the majority of cases where defendants base removal on federal question jurisdiction, a federal law creating the cause of action provides the necessary disputed federal issue.  See Grable & Sons, 545 U.S. at 312.  Plaintiffs' first three claims involve alleged violations of the Securities Act of 1933.  (See Compl. ¶¶ 110-32.)  However, Congress has explicitly barred defendants from removing Securities Act suits originally filed in state court to federal court.[5]  15 U.S.C. § 77v(a) ("[N]o case arising under this [act] and brought in any State court of competent jurisdiction shall be removed to any court of the United States."); Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691, 696 (2003).  This Court, therefore, may not consider the allegations related to Plaintiffs' claims under the Securities Act when performing its jurisdictional analysis.  To do so would violate Congress' considered judgment that the division of labor between the state and federal courts is best respected by leaving suits alleging Securities Act violations in

---

[5] There is a limited exception to this no-removal rule for cases filed in state court as class actions.  See 15 U.S.C. §§ 77p(c), 77v(a).  That exception is inapplicable to Plaintiffs' suit.

9

state court.  See Mikulski v. Centerior Energy Corp., 501 F.3d 555, 561 (6th Cir. 2007) (en banc) ("[I]t is up to Congress, not the federal courts, to decide when the risk of state-court error with respect to a matter of federal law becomes so unbearable as to justify divesting the state courts of authority to decide the federal matter." (citation and internal quotation marks omitted)).

Plaintiffs' remaining four claims are based on state law and assert that Defendants have committed common law fraud and violated the Tennessee Consumer Protection Act and Tennessee Securities Act.  (Compl. ¶¶ 133-66.)  Although these claims do not directly reference federal law, Defendants argue that any court will have to determine disputed issues of federal law – such as whether Defendants violated regulations governing the pricing of the Funds' shares and the required level of liquidity – to determine whether Defendants are liable.  (Defs' Resp. at 4-5.)  Defendants' arguments are unpersuasive.

The Supreme Court has repeatedly instructed that "it takes more than a federal element 'to open the "arising under" door.'" Empire HealthChoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701 (2006) (quoting Grable & Sons, 545 U.S. at 313).  To succeed on a common law fraud claim, a plaintiff needs to prove that:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a

10

>material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008) (citations omitted). Similarly, Plaintiffs need only demonstrate that they have suffered a loss because "of an unfair or deceptive act or practice" to prevail on their Tennessee Consumer Protection Act claim and that Defendants "employ[ed] any device, scheme, or artifice to defraud" in connection with "the offer, sale, or purchase of any security" to prevail on their Tennessee Securities Act claim. Tenn. Code Ann. §§ 47-18-109(a)(1); 48-2-121(a)(1). Defendants intend to argue that they cannot have violated these statutes because they abided by all applicable federal regulations. (Defs' Resp. at 8-11.) However, their proposed arguments are defenses.

For more than a century, it has been clear that a party may not invoke federal jurisdiction on the basis of a defense – even one that is certain to be asserted. "[T]he right of the plaintiff to sue cannot depend on the defense which the defendant may choose to set up." Tennessee v. Union & Planters' Bank, 152 U.S. 454, 459 (1894) (internal quotation marks and citation omitted); see also Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908) ("[A] suit arises under the Constitution and laws of the United States only when the

plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."). Tennessee law governs whether Defendants' actions constitute fraud. Defendants' argument that federal regulations necessarily establish the governing standard of care fails because Plaintiffs fail to claim that Defendants' alleged violations of federal regulations amount to negligence per se under state law. Thus, the asserted federal questions are not dispositive of Plaintiffs' state law claims. Cf. Mikulski, 501 F.3d at 571 (finding that, in the context of an Ohio common law fraud claim asserted by shareholders against a corporation, the effect of a disputed IRS regulation would not be dispositive, making the assertion of federal jurisdiction inappropriate). Nor is resolution of whether Defendants violated federal regulations required to find Defendants liable. See City of Warren, 495 F.3d at 286 (holding that resolution of the federal issue must be required for federal jurisdiction to exist). At most, federal regulations would provide evidence about whether Defendants have met the applicable standard of care. That is not sufficient to establish federal question jurisdiction. See Grable & Sons, 545 U.S. at 313 (holding that a party must show more than the "mere need to apply federal law in a state-law claim" to establish federal question jurisdiction).

Defendants' arguments also fail on an additional ground. Were the Court to accept Defendants' assertion that the potential need to apply federal law to analyze Plaintiffs' state-law claims triggers federal jurisdiction, it would be nearly impossible to assert a state-law fraud claim against a securities dealer and remain in state court. Thus, claims currently handled by state courts would fall within the federal courts' purview. If Congress had intended such a dramatic shift in the relative responsibilities of the state and federal courts, it would have said so explicitly. Grable & Sons, 545 U.S. at 318 (Congress must provide an explicit "welcome mat" where accepting federal jurisdiction would "attract[] a horde of original filings and removal cases raising . . . state claims with embedded federal issues"). That Congress intended no such shift is shown by its instruction that even federal claims made solely under the Securities Act of 1933 may not be removed from state court. See 15 U.S.C. § 77v(a). Even assuming that Plaintiffs' suit raises a contested, substantial question of federal law, the dramatic shift Defendants' argument would cause in the sound division of labor between state and federal courts vetoes federal question jurisdiction in this case. See Grable & Sons, 545 U.S. at 313-14 (discussing the "veto"); see also Mikulski, 501 F.3d at 560 ("[S]tate courts are generally

presumed competent to interpret and apply federal law." (citing Zwickler v. Koota, 389 U.S. 241, 245 (1967))).

**IV.    CONCLUSION**

Defendants have not demonstrated that any of Plaintiffs' potentially removable claims satisfy the requirements for the "special and small category" of cases that necessarily raise the substantial, disputed issue of federal law required to trigger federal jurisdiction.  Empire HealthChoice, 547 U.S. at 699. Therefore, Plaintiffs' Motion to Remand is GRANTED, and this matter is REMANDED to the Circuit Court for Shelby County, Tennessee.

So ordered this 24th day of June, 2010.


                                    s/ Samuel H. Mays, Jr.
                                    SAMUEL H. MAYS, JR.
                                    UNITED STATES DISTRICT JUDGE